UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

v.

Scott James Rocky,

Defendant.

_____/

Case No. 25-20354

Hon. Terrence G. Berg

**UNITED STATES'S SENTENCING MEMO**

As a sworn federal law enforcement officer, Scott Rocky downloaded, possessed, and distributed child sexual abuse material, actively feeding a criminal market built on the sexual exploitation of children — among the most heinous crimes recognized by our legal system. There is no greater betrayal of public trust than a law enforcement officer who becomes the very criminal he is sworn to stop. The advisory guideline range reflects the severity of that conduct and calls for a substantial sentence.

The United States nevertheless recognizes Rocky's early acceptance of responsibility, his voluntary engagement in sex offender treatment since the onset of his bond, his lack of prior criminal history, the unwavering support of his family, and his ongoing battle with stage 4 cancer that will require continued medical treatment during any period of incarceration. Balancing these factors against the gravity of his conduct, the United States recommends a sentence at the

bottom of the advisory guideline range, followed by a robust term of supervised release. Such a sentence is just, proportionate, and sufficient to reflect the full gravity of this offense, the profound breach of public trust it represents, and the need to protect the community from this defendant.

## Discussion

I.   **Nature and Circumstances of the Offense and the History and Characteristic of the Defendant.**

The gravity of this offense cannot be overstated. Rocky first came to law enforcement's attention after downloading more than 4,000 files flagged as child sexual abuse material through a file sharing program that allows user to remain anonymous. A subsequent search of his computer uncovered over 500 saved files, many depicting real minor children, including toddlers, being abused.

It is well-recognized that harm caused by child sexual abuse material does not end when the camera stops. These images are permanent records of a child's abuse; and every time they are accessed, shared, or distributed, that harm is renewed and compounded. As courts have recognized, the mere existence of and traffic in such images creates a clear and present danger to all children, inflaming the desires of those who prey on them and driving demand for the creation of new material, which means the abuse of new victims.

The evidence makes clear that Rocky was far from a passive recipient. The sheer volume of shared files and the frequency with which he shared them point

unmistakably to deliberate, active participation in the trafficking of child sexual abuse material. This was not accidental exposure or passive consumption; Rocky sought out this material and methodically made it available to others within a predatory black market built on the sexual exploitation of children. By possessing, receiving, and actively distributing this material, Rocky did not merely consume this market; he sustained it. Every file he downloaded represented a child who was abused so that image could exist. Every file he shared ensured that abuse would be witnessed again and again, by others who would use it to fuel their own predatory desires.

What elevates the danger this defendant presents beyond the offense itself is who he is: a sworn federal law enforcement officer entrusted with the authority to enforce the very laws he broke. As a Customs and Border Protection officer, Rocky had firsthand knowledge of the devastating reality of child sexual exploitation and how often CBP interdiction uncovers child sexual abuse material crossing our borders. He understood better than most exactly what this material was, how it was produced, and the harms to the children in it. But that understanding did not stop him.

Instead, Rocky allowed an insatiable sexual interest in children — and the gratification he derived from witnessing their abuse — to override every oath he had taken and every obligation his badge imposed. This was not a momentary

3

lapse in judgment. This was deliberate conduct, repeated over time, by a man who knew precisely what he was doing and chose to do it anyway.  The consequences of that choice reach far beyond his own conduct. When a law enforcement officer commits the very crimes he is sworn to prevent, it erodes public confidence in the institutions charged with protecting the community — and hands defendants in future cases a ready argument against the integrity of those who investigate and prosecute them.

The United States acknowledges that Rocky has no prior criminal history. But that must be considered in context. Child sexual abuse material offenses are by nature committed in private, making them difficult to detect. This defendant made detection even harder. He used anonymizing software to exchange material, installed wiping and cleaning programs to obstruct forensic review, and systematically deleted and removed files to destroy evidence. Each measure reflects sophisticated technological knowledge and deliberate familiarity with law enforcement investigative techniques — all intended to prevent his criminal conduct from being undetected. They raise a legitimate question about whether his record reflects the full scope and duration of his conduct.

The United States also recognizes many mitigating factors present in this case. Unlike many defendants who appear before this Court, Rocky did not face the kind of profound childhood adversity that so often marks the path to criminal

conduct. He was raised in a stable environment, notwithstanding his mother's struggle with alcoholism, and has built over his 58 years a life supported by a devoted family — one that has stood by him through these proceedings and made significant sacrifices to accommodate the conditions of his bond supervision. The United States does not minimize those facts. Rocky's ongoing battle with prostate cancer is also acknowledged, and the Court will no doubt need to consider the medical and logistical implications of a custodial sentence. The United States is likewise encouraged that since the onset of his bond, Rocky has actively engaged in outpatient individual sex offender therapy and has remained compliant with the conditions of his release. These are meaningful steps in the right direction, and they are not lost on the United States.

They do not, however, alter the fundamental calculus of this case. Rocky's stable upbringing, professional achievement, and family support make his conduct not more understandable, but harder to explain. He had every advantage, every reason, and every professional obligation to know better. That he chose this path regardless is not a mitigating fact — it is an aggravating one.

## II. The § 3553(a) Objectives Support a Bottom-of-Guidelines Sentence

While substantial, a sentence at the bottom of the guideline range is just punishment that reflects the full gravity of this offense. It accounts for the nature and volume of the material Rocky possessed and distributed, his deliberate efforts

to conceal his conduct, and the profound breach of public trust his position demanded he uphold. At the same time, it gives appropriate weight to the mitigating factors present here — his lack of prior criminal history, his family support, his medical condition, and his early engagement in sex offender treatment. A sentence at the low end of the range is a measured and proportionate response to the totality of the circumstances: one that punishes Rocky for the serious harm he has caused, protects the community, and reflects the need to deter others, particularly those in positions of being trusted with enforcing the law, from engaging in the same conduct.

In this case, Rocky's actions reflect a genuine danger to the public and the children in it. A sentence at the low end of the guidelines — which will be Rocky's first term of incarceration — followed by a robust term of supervised release with sex offender conditions, provides meaningful and sustained public protection.

## Conclusion

A sentence at the bottom of the applicable advisory guidelines range, is sufficient, but not greater than necessary, to reflect the seriousness of this offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by this defendant. The United States requests that the Court impose such a sentence.

6

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

*s/ Nhan Ho*
Nhan Ho
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9632
Nhan.ho@usdoj.gov

Date: May 14, 2026

**CERTIFICATE OF SERVICE**

I certify that on May 14, 2026, I electronically filed this document with the Clerk of the Court of the Eastern District of Michigan using the ECF filing system, which will send notification to all counsel of record via email.

*s/Nhan Ho*
Nhan Ho
Assistant United States Attorney

8